798 F.2d 1416
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael ROUNDTREE, Petitioner-Appellant
v.
E.P. PERINI, Respondent-Appellee.
 No. 85-3390.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1986.
 
 Before MARTIN and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Michael Roundtree appeals the denial of his habeas corpus petition under 28 U.S.C. Sec. 2254. Roundtree was tried and convicted in 1982 of the involuntary manslaughter of Donald Miller and was sentenced to a term of three to ten years.
 
 
 2
 On the night of January 28, 1982, Everett Taylor, Michael Williams, Donald Miller and petitioner met and played basketball at a local gvm. After playing a couple of games the four walked to a nearby store to purchase some beer. Near the store they met Kenneth Taylor and Darius McCoy.
 
 
 3
 The six young men then decided to go to Michael Williams' home to watch a basketball game on television. Upon arriving at the Williams' home they went into the living room where the television was located. At some point Roundtree pulled out a gun and took out three bullets which he placed on the bar. During this time the others were teasing Roundtree. He left the living room taking the gun with him. When he returned the others continued laughing and joking. He then began pointing the gun--first at Michael Williams who ducked and turned away, then at Everett Taylor who ran into the hallway, then at Kenneth Taylor and finally at Donald Miller. When the gun was pointed at Donald Miller he pulled the trigger and Miller was shot. Miller died at the hospital later that evening. Roundtree went to the police station at 2:00 a.m. on January 29, 1982, accompanied by his sister.
 
 
 4
 At his trial the results of several tests were introduced. A gunshot residue test yielded negative results indicating that the victim had not fired a gun recently, and a trace metal detection test was inconclusive as to whether the victim had handled any metal object. Experts testified that the gun muzzle target distance was between twelve to eighteen inches, and that it required between 11 1/2 to 12 pounds of pressure to fire the gun.
 
 
 5
 Roundtree's first of eight issues here is the improper acceptance of facts as found by the Ohio Court of Appeals. The order below reflects the court made an independent review of the record prior to its adopting the magistrate's report and recommendation. Consequently, this argument must fail.
 
 
 6
 Roundtree next asserts that the trial court improperly limited his cross examination of prosecution witness, Everett Taylor, by sustaining the State's objections on three occasions. While it is settled law that the extent to which a witness may be cross-examined is within the discretion of the trial judge, it is also true that "a limitation on cross examination which prevents a person charged with a crime from placing before a jury facts for which bias, prejudice or lack of credibility of a prosecution witness might be inferred constitutes denial of the right of confrontation guaranteed by the Sixth Amendment." United States v. Garrett, 542 F.2d 23, 25 (6th Cir.1976); Davis v. Alaska, 415 U.S. 308, 315 (1974). An examination of the record reveals that defendant's counsel conducted a thorough cross-examination of Taylor, and Roundtree's right of confrontation was never impaired.
 
 
 7
 For background purposes, witness Taylor was present at the time Roundtree shot Donald Miller. At trial, defendant tried to establish that several of the persons in the room at the time of the shooting had guns, including Taylor, and that they were all horsing around with the guns when the accidental shooting occurred. Therefore, upon cross-examination of Taylor, defendant attempted to establish that Taylor also had a gun that evening. The first colloquy which lead to an objection which the trial court sustained occurred as follows:
 
 
 8
 Q. Did anybody have a gun there that afternoon or that evening?
 
 
 9
 A. No, not that I seen.
 
 
 10
 Q. Did you have a gun?
 
 
 11
 A. No.
 
 
 12
 Q. Did you own a gun?
 
 
 13
 A. No.
 
 
 14
 Q. Never had a gun?
 
 
 15
 A. No.
 
 
 16
 Q. Never possessed a gun?
 
 
 17
 A. No.
 
 
 18
 Q. Never touched a gun, is that what you are saying?
 
 
 19
 A. Never touched a gun --yes, I touched a gun before.
 
 
 20
 Q. You own a gun, don't you?
 
 A. No
 
 21
 Q. Didn't you have a loaded gun with you?
 
 
 22
 A. No, I didn't.
 
 
 23
 MR. RINKER: Objection.
 
 
 24
 THE COURT: Sustained.
 
 
 25
 In Davis v. Alaska, 415 U.S. 308, 316 (1973), the Supreme Court stated that a trial judge always had ' 'broad discretion ... to preclude repetitive and unduly harassing interrogation." It is clear that the trial judge merely exercised his discretion here, and Roundtree's right of confrontation was not impinged as a result. The witness clearly stated that he did not own a gun or possess a gun on the evening in question; further questioning on the issue was repetitive.
 
 
 26
 Following the questions set forth above, defendant introduced "Defendant's Exhibit A," a photograph of Taylor and some other fellows, in which Taylor is holding a gun. Defendant then began to question Taylor about whether the gun was his. Taylor answered that it was not his, it belonged to one of his friends. Defendant asked whose it was and Taylor told him it was Donald Myra's gun. Defendant then asked how the picture got taken, at which point the State objected and the objection was sustained. It is clear from the transcript that this line of questioning had become irrelevant, since Taylor clearly stated that the gun was not his and had previously admitted that he had handled guns in the past. Thus, Taylor's credibility was not being attacked by these questions and the questions were limited due to their lack of relevance.
 
 
 27
 Finally, Roundtree claims that the trial court improperly limited his inquiry into Taylor's probationary status at the time of the shooting. The following exchange provides the basis for this claim:
 
 
 28
 Q. Have you ever been arrested or convicted of any state of federal offense9
 
 
 29
 A. Yes.
 
 
 30
 Q. What was that?
 
 
 31
 A. Receiving stolen property.
 
 
 32
 Q. You were on probation at that time, is that right:
 
 
 33
 MR. MAROLT: Objection.
 
 
 34
 THE COURT: Sustained.
 
 
 35
 Q. (By Mr. Mancino) Didn't you tell Mrs, Roundtree that you weren't going to tell the police about that gun because you were on probation and it might get you into trouble?
 
 
 36
 MR. MAROLT: Objection.
 
 
 37
 MR. RINKER: Objection.
 
 
 38
 THE COURT: Sustained.
 
 
 39
 By inquiring into Taylor's probationary status at the time of the shooting, defendant was not only attacking Taylor's general credibility, but was also attempting, to establish a motive for Taylor's denying possession of a gun on the evening of the shooting. As the Magistrate below noted: "Taylor's status as a probationer could have provided the factual basis for jury inferences relating to an unwillingness on Taylor's part to testify about his possession of a firearm." TR at 217. With respect to this type of questioning, the Supreme Court has noted:
 
 
 40
 A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they relate directly to issues or personalities in the case at hand.... We have recognized that the exposure of a witness' motivation in testifying, is a proper and important function of the constitutionally protected right of cross-examination.
 
 
 41
 Davis v. Alaska 415 U.S. at 315-16.
 
 
 42
 The magistrate and the district court below found that although Taylor's probationary status was a relevant and proper areas of cross-examination, there was no limitation to defendant's right of confrontation since the question objected to was asked without a proper foundation. The court below noted, "there is nothing in the record that would suggest that a properly formulated question on the probationary status of the witness would not have been admitted at trial." TR 265. In addition, the record indicates that the subject of Taylor's probation was successfully pursued with two subsequent witnesses, each of whom admitted that Taylor planned to perjure himself at Roundtree's trial by denying possession of a handgun.
 
 
 43
 While we agree with the district court's analysis, that defendant's right of confrontation was not violated by a limitation in his cross-examination of Taylor, we would add that very recently the Supreme Court held that:
 
 
 44
 [T]he constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to Chapman harmless-error analysis. The correct inquiry is whether, assuming that tile damaging potential of the cross-examination were fully realized, a reviewincr court might nonetheless say that the a error was harmless beyond a reasonable doubt.
 
 
 45
 Delaware v. Van Arsdall, op at 11 (April 7, 1986). Under the facts of this case, even if we were to conclude that Roundtree's right of confrontation was somehow impinged by a limitation in his cross examination, our unavoidable conclusion would be that the error was harmless. As noted by the court below, defendant was subsequently able to question other witnesses about Taylor's probationary status and thereby develop his theory as to Taylor's motivation for perjuring himself. Moreover, in all other respects, defendant's cross-examination of Taylor was thorough, and given the overall strength of the prosecution's case, it is clear that any error which may have occurred was harmless.
 
 
 46
 Roundtree's third claim of error is that he was denied his right to a fair trial when the prosecution made improper representations during rebuttal argument. A prosecutor is entitled to wide latitude in rebuttal argument and statements must be so egregious as to render the trial fundamentally unfair. Donnelly v. Dechristoforo, 416 U.S. 637 (1974); Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982). The trial court admonished the jury that closing arguments were not to be taken as evidence. This was prior to the closing arguments and in the charge itself. This was sufficient.
 
 
 47
 Roundtree next contends he was denied due process and a fair trial when the trial court refused to instruct the jury on the theory of accident. The Ohio Court of Appeals concluded that the trial court committed error in not instructing upon the issue of accident, given the defense was properly raised and evidence was introduced to support it. However, the Ohio Court of Appeals held that it was harmless error because other witnesses testified that the shooting was not an accident. We agree.
 
 
 48
 The necessity of a jury instruction on accident raises only an issue of state law, and it is well settled that errors in the application are not cognizable in federal habeas corpus proceedings unless they have resulted in a denial of fundamental fairness. See Hendersen v. Kibbe, 431 U.S. 145 (1977); Walker v. Engle, 703 F.2d 959, 962 (6th Cir. 1983). We conclude that the failure to instruct on accident did not violate any guaranteed constitutional right which would have rendered petitioner's trial fundamentally unfair.
 
 
 49
 We have reviewed the remaining allegations made by Roundtree and find them without merit.
 
 
 50
 Judgment affirmed.