867 F.2d 611
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Fred J. KELLY, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 87-3705.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1989.
 
 Before BOYCE F. MARTIN Jr. and NATHANIEL R. JONES, Circuit Judges; and JOHN FEIKENS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner-appellant, Fred J. Kelly, was convicted by a jury of conspiring to possess, with the intent to distribute, cocaine and for aiding and abetting the possession with the intent to distribute cocaine in violation of 21 U.S.C. Secs. 846 and 841 and 18 U.S.C. Sec. 2. He now appeals the district court's order denying his motion to vacate his jury conviction. For the reasons which follow, we affirm.
 
 I.
 
 2
 During the voir dire process of Kelly's jury trial, twelve jurors were selected from the panel to undergo direct examination. While only one of those jurors was black, this juror, Hayward Fergusen, served on Kelly's jury. One of the original twelve jurors, Jesse Broadwater, failed to indicate his race on his juror questionnaire. Broadwater was peremptorily struck by the Government. Of the jurors who were called to replace the dismissed jurors, Vada Culberson, who is black, revealed that Kelly's attorney represented her in a legal matter in January of 1977. Although the Government asked the court to excuse Culberson for cause, because Culberson stated that she could be fair and impartial and because her contact with the defense counsel occurred eight years before the trial, the court denied the Government's request. Although the Government initially declined to peremptorily strike Culberson, it ultimately used one of its peremptory challenges to strike her from the panel. Following this round of challenges, six new jurors were selected. Of those six, five reported on their juror questionnaires that they were white. The questionnaire of the sixth juror, Patricia Dabney, had apparently been lost. Dabney and three other jurors were peremptorily struck. Of the seven jurors on the venire who were not used, six were known to be white. The questionnaire of the seventh juror, Elizabeth Lockett, has also been lost.
 
 
 3
 The principal evidence against Kelly was provided by Rodean Frazier who testified pursuant to a plea bargaining agreement with the Government. According to the Government, Kelly (a New York resident) put Frazier (a resident of Cincinnati) in contact with New York City cocaine dealers. The evidence presented consisted of Frazier's testimony and logs of intercepted telephone conversations.
 
 
 4
 On direct examination by the Government, Frazier testified that he previously lent Kelly $5,000.00 to help pay Kelly's legal fees in a criminal trial in New York. In the New York trial, Kelly was charged with murdering his girlfriend and was subsequently convicted of manslaughter. During the instant trial, the Government asked Kelly's wife whether the
 
 
 5
 person who was killed and about which the charges were brought [against your husband] was a woman that your husband was seeing socially.
 
 
 6
 J.App. at 16. In response to an objection by Kelly's attorney, the Government asserted that, since defense counsel raised the issue of another woman in his opening argument, the Government had the right to establish that the "other woman" was the same woman that Kelly was accused of murdering. The Government also argued that since Kelly's wife testified that she was unaware that her husband was involved in drugs, it had a right to show that she was not aware of all of her husband's activities and that, in fact, he may have lied to her about some of his activities. After the court expressed its reservation with the assumption that "because a man has a girlfriend ... he is doing drugs," the Government dropped this line of questioning with Kelly's wife. Supp.J.App. at 17.
 
 
 7
 The Government, however, returned to this line of questioning while cross-examining Kelly. The Government asked the following questions which were not objected to by defense counsel:
 
 
 8
 Wasn't it your testimony ... that you used cocaine a couple of years ago casually, you had experimented with it and that you tried it because the females with whom you associated like it at the time?
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 Now the females who liked it were not your wife, Christine, were they?
 
 
 12
 J.App. at 233. In response to Kelly's contention that he no longer used cocaine, the Government asked the following question which was objected to by defense counsel:
 
 
 13
 In fact, you haven't used it since your mistress was shot and killed back in October of '83?
 
 
 14
 Id. at 234. After the court sustained the defense's objection and instructed the jury to disregard that question, the Government then asked
 
 
 15
 Isn't it a fact, Mr. Kelly, that in May of 1983, you were convicted by a jury?
 
 
 16
 Id. In response to an objection by Kelly's attorney, the Government argued that the nature of the conviction is a proper piece of information for the jury to have. The court, however, stated that it would only permit the Government to ask Kelly if he was convicted of a state or federal offense and specifically noted that Kelly's manslaughter conviction was not relevant to whether he arranged to have Frazier contact New York drug dealers. Although the Government adhered to the district court's instructions on this issue, at a later point in the trial the Government asked Kelly the following questions:
 
 
 17
 Mr. Kelly, between April 1983 and October 1983, you carried on an affair with another woman that you kept secret from your wife, isn't that correct?
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 And in doing so you had occasion to lie to your wife on a number of occasions about your activities?
 
 
 21
 J.App. at 243. After Kelly's attorney objected, the court stated that "That's the extent of the examination in that area. We'll move on." Id.
 
 
 22
 The issues before this court on appeal are whether the Government purposefully used peremptory strikes to keep blacks from serving on his jury and whether the Government's repeated references to Kelly's past "bad acts" constituted prosecutorial misconduct which deprived him of a fair trial.
 
 I.
 
 23
 Kelly's attorney on appeal admits that Kelly's trial attorney failed to make a contemporaneous objection to the Government's use of peremptory strikes. He argues, however, that the issue can nevertheless be raised on collateral attack of the conviction because Kelly has satisfied the "cause" and "prejudice" test as elaborated by the Supreme Court in Wainwright v. Sykes, 433 U.S. 72 (1976). With respect to "cause," Kelly's attorney argues that at the time of Kelly's trial, objections concerning the Government's use of peremptory challenges were governed by the standards established in Swain v. Alabama, 380 U.S. 202 (1965). Since Swain imposed a crippling burden of proof on criminal defendants who alleged discrimination in the use of peremptory strikes and since the Supreme Court did not reject this burden of proof until it decided Batson v. Kentucky, 106 S.Ct. 1712, 1721 (1986), Kelly's counsel urges that any objection based on the Government's actions in this case would have been both frivolous and futile. With respect to the "prejudice" prong of the Wainwright test, Kelly argues that the Government's conduct infected Kelly's trial from the outset and constituted 'prejudice' per se regardless of the particular circumstances of Kelly's individual case. Thus, Kelly argues, since the cause and prejudice test has been satisfied, Wainwright dictates that this issue is properly before this court on review.
 
 
 24
 Kelly also contends that the Supreme Court's holding in Batson should be retroactively applied because his case fits into the narrowly drawn procedural exception of Griffith v. Kentucky, 107 S.Ct. 708 (1987). Griffith held that Batson and other cases establishing "new rules" in criminal prosecutions apply retroactively "to all cases, state or federal, pending on direct review or not yet final." Id. at 716. While the Supreme Court in Allen v. Hardy, 106 S.Ct. 2878, 2880 (1986), held that "Batson should not be applied retroactively on collateral review of convictions that became final before [Batson] was announced," the Court defined "final" as the time when the judgment of conviction was rendered, the appeals period was exhausted and the time for a petition for certiorari had elapsed. Id. at n. 1. Since Batson was decided on April 30, 1986 and Kelly's petition for certiorari was denied on May 27, 1986, Kelly argues that his case was not "final" as defined by the Supreme Court.
 
 
 25
 After carefully reviewing the voir dire process as presented in the record, we are not persuaded that the Government purposefully used preemptory strikes to eliminate blacks from serving on the jury. Therefore, we need not decide whether Batson could be applied in this case, and we accordingly reject Kelly's first claim.
 
 II.
 
 26
 Kelly's second claim is that the Government's repeated references to his prior conviction and his past relationships with other women deprived him of a fair trial. Specifically, Kelly contends that Fed.R.Evid. 404(b) prohibits evidence of "other crimes, wrongs, or acts" to be used to "prove the character of a person in order to show action in conformity therewith." The Government contends that this evidence was admissible to prove Kelly's motive in becoming involved in the drug transactions.
 
 
 27
 We agree with Kelly's contention that the Government's actions constituted prosecutorial misconduct. However, in examining the totality of the circumstances surrounding this case, we do not find that the Government's comments so unfairly tainted the trial that this misconduct rose to the level of a constitutional violation. See Olsen v. McFaul, 843 F.2d 918 (6th Cir.1988). While we note that the Government's conduct, in light of the district court's rulings concerning the admissibility of Kelly's prior "bad acts," was improper, we hold that the conduct was not so "egregious as to render the trial fundamentally unfair." Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982). Therefore, we also reject Kelly's second claim.
 
 III.
 
 28
 For the reasons stated above, the judgment of the district court is hereby AFFIRMED.
 
 
 
 *
 Honorable John Feikens, United States District Court for the Eastern District of Michigan, sitting by designation