884 F.2d 579
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James R. FUSSELL, Jr., Petitioner-Appellant,
v.
Terry L. MORRIS, Respondent-Appellee.
 No. 88-4105.
 United States Court of Appeals, Sixth Circuit.
 Sept. 1, 1989.
 
 Before WELLFORD and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Petitioner appeals the order of the district court dismissing his petition for a writ of habeas corpus. Because none of petitioner's assignments of error have merit, we affirm.
 
 I.
 
 2
 Following a jury trial in the Court of Common Pleas of Monroe County, Ohio, petitioner was convicted of two counts of aggravated murder on May 22, 1979. He was sentenced to two terms of life imprisonment, to be served consecutively.
 
 
 3
 Prior to trial, petitioner filed a motion with the trial court requesting that he be allowed six peremptory challenges. Ohio law provides that defendants in felony trials are generally entitled to four peremptory challenges. O.R.C. Sec. 2945.21(A)(1) (1987). However, defendants in "capital" Sec. 2945.21(A)(1) (1987). However, defendants in "capital" cases are entitled to six, Ohio R.Crim.P. 24(C), and aggravated murder is defined as a capital case by statute. O.R.C. Sec. 2901.02(B) (1987). Nevertheless, the trial court held that petitioner was entitled to only four peremptory challenges because the Supreme Court had declared Ohio's death penalty unconstitutional in Lockett v. Ohio, 438 U.S. 586 (1978).
 
 
 4
 Petitioner also filed a pretrial motion for change in venue on the ground that pretrial publicity made it impossible for him to receive a fair trial in Monroe County. The trial court took judicial notice that Monroe County had a population of approximately 15,000 people, and several newspaper articles discussing the crime were admitted into evidence. The murders received extensive publicity in Monroe County because the victims were the wife and daughter of a former Monroe County prosecutor.
 
 
 5
 The evidence presented at trial against petitioner was overwhelming. Petitioner's sister testified that she dropped him off near the victims' home on the morning of the murder, and that he was carrying a gun. Witnesses testified to seeing petitioner driving the victims' car on the day in question. Petitioner admitted to shooting the victims in statements made to the sheriff and prosecutor, led the sheriff to the place in the woods where the weapon was found, and told the sheriff that he had wiped the fingerprints off of it.
 
 
 6
 During his closing argument, the prosecutor described, without objection, at some length "the terror those women must have felt when they were walking down that hill!" He also speculated, again without objection, that the baby of one of the victims, who had been present at the time of the crime, "would be dead also" if she had been crying. Petitioner did object, however, when the prosecutor asked to the jury "to remember in your considerations, when George Burkhart goes out to that house, Marjorie won't be there. When George runs into their old friends, or has something he wants to talk about--" After the court overruled petitioner's objection that this line of argument appealed to the sympathies of the jury, the prosecutor continued:
 
 
 7
 Marjorie won't be there. That baby. When she grows up, she is in school and she gets her first grade card, she gets all A's, she wants to come home running to her Mom, Erika is not going to be there. When she has her first prom and she wants to have her picture taken and share that joy with her Mother, Erika is not going to be there. Erika will always be twenty years old.
 
 
 8
 During rebuttal, the prosecutor argued that defendant was a liar, and that he had "mastered the technique of using the big lie" which the prosecutor described as "just telling something so absurd and telling it long enough, consistently enough, constantly enough, that sometimes somebody is going to believe you...." The prosecutor then explained at length that Hitler used the same technique during and before World War II. In conjunction with this line of argument, he read from a letter, admitted into evidence, in which the defendant asked a friend to testify untruthfully on his behalf. Petitioner made no objection during this portion of the state's rebuttal argument.
 
 
 9
 Following petitioner's conviction, he appealed to the Ohio Court of Appeals, which affirmed, and he subsequently sought leave to appeal to the Ohio Supreme Court, which was denied. He thereafter filed three separate motions for new trial or post-conviction relief, all of which were denied. He then filed the instant habeas petition in the district court, listing six separate grounds for relief. The following are relevant to this appeal:
 
 
 10
 1. Conviction obtained by action of a petit jury which was unconstitutionally selected and impaneled.
 
 
 11
 2. Trial Court's decision to overrule Defendant's Motion for a change of venue denied the Defendant his right to Due Process of Law.
 
 
 12
 3. Trial Court denied Defendant his right to Due Process of Law by informing the prospective jurors that the Defendant was not charged with a capital offense and by discussing punishment with the prospective jurors.
 
 
 13
 6. Defendant was denied Due Process of Law as a result of prosecutorial misconduct during closing arguments.
 
 
 14
 Petitioner admitted that the third ground had not been presented to the state courts, but argued that it was not presented "because the Defendant feared that if this objection was sustained in appeal, the Defendant would face the death penalty if a retrial occurred."
 
 
 15
 The petition was referred to the magistrate, and he issued a Report and Recommendation concluding that none of the grounds asserted by petitioner warranted relief. The district court thereafter reviewed the matter de novo, and held that the magistrate's Report and Recommendation correctly resolved the petition. The court therefore entered an order denying the petition on the magistrate's Report, and this appeal followed.
 
 II.
 
 16
 Petitioner argues first that the district court erred by concluding that his sixth amendment right to trial by jury was not violated by the trial court's limitation on the number of peremptory challenges available to him. A writ of habeas corpus may be granted "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. Sec. 2254 (1977). It follows that "[a] federal court is not free to issue a writ of habeas corpus 'on the basis of a perceived error of state law.' " Smith v. Sowders, 848 F.2d 735, 738 (6th Cir.), cert. denied, 102 L.Ed.2d 139 (1988) (quoting Pulley v. Harris, 465 U.S. 37, 41 (1984)).
 
 
 17
 Petitioner in this case asks us to ignore the interpretation of Ohio's rules governing the number of peremptory challenges available to a criminal defendant rendered by the Ohio Court of Appeals on direct appeal. We are not free to do so. "Because peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." Ross v. Oklahoma, 101 L.Ed.2d 80, 90 (1988) (citations omitted). The Ohio courts have concluded that petitioner was entitled to four peremptory challenges in this case. We cannot disturb this conclusion. We hold that the district court did not err by denying relief upon this ground.
 
 III.
 
 18
 Petitioner next argues that the district court erred by failing to conduct an evidentiary hearing on his claim that pre-trial publicity denied him a fair trial. "Whether an evidentiary hearing is mandatory depends upon whether one of the eight circumstances listed in 28 U.S.C. 2254(d) is present." Ford v. Seabold, 841 F.2d 677, 691 (6th Cir.), cert. denied, 102 L.Ed.2d 334 (1988). This court has summarized these circumstances as follows:
 
 
 19
 Section 2254(d) provides that state court factual findings "shall be presumed to be correct, unless ..." the facts were not "resolved" or "adequately developed," or the state court's fact finding procedures were not "fair" or lacked "due process," or unless the state record does not support the facts as found.
 
 
 20
 McMillan v. Barksdale, 823 F.2d 981, 983-84 n. 3 (6th Cir.1987).
 
 
 21
 As in Ford, "none of these circumstances were shown by the petitioner, admitted by the state, or 'otherwise appear' from the record." 841 F.2d at 691 (citations omitted). On the contrary, the record reveals that petitioner was given every opportunity to present evidence concerning the pretrial publicity. The trial court considered the issue carefully, and simply determined that petitioner did not meet his heavy burden of demonstrating that a fair trial was impossible in light of the publicity. Moreover, the magistrate, in considering the claim, relied upon the description of the publicity contained in petitioner's memorandum in support of jurisdiction filed with the Ohio Supreme Court. An evidentiary hearing could hardly be expected to give the magistrate a more favorable view of the facts than did petitioner's own description. We hold that the district court did not err by refusing to conduct an evidentiary hearing on the issue of pretrial publicity.
 
 IV.
 
 22
 Petitioner next claims that the district court erred by failing to conduct an evidentiary hearing on the claim that he was deprived of a fair trial by the jury instruction that aggravated murder was a capital crime. Petitioner admits that he failed to exhaust his state remedies on this claim. Consequently, he may not present it on habeas unless he demonstrates both cause and prejudice. Wainwright v. Sykes, 433 U.S. 72, 87 (1977). Petitioner argues that he did not raise the issue on appeal because he feared that he would receive the death penalty if his case were retried. It is well settled that tactical decisions not to present a claim to the state courts do not constitute cause under Sykes. In Smith v. Murray, 477 U.S. 527, 534 (1986), the court stated that "a deliberate, tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failing to adhere to a State's legitimate rules for the fair and orderly dispositions of its criminal cases." Because petitioner did not establish cause for failing to present this claim in state court, he waived it for purposes of habeas review. An evidentiary hearing could not change this result. We hold that the district court did not err by refusing to conduct a hearing.
 
 V.
 
 23
 Finally, petitioner argues that he was denied a fair trial as a result of prosecutorial misconduct during closing argument. Sitting en banc, this court set forth the standard for reviewing allegations of prosecutorial misconduct on habeas:
 
 
 24
 Before habeas relief is granted, the prosecutor's statements must be so egregious as to render the trial fundamentally unfair. This determination is to be made by evaluating the totality of the circumstances surrounding each individual case. Our Court has identified the factors we are to consider in weighing the extent of prosecutorial misconduct in habeas cases.
 
 
 25
 In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.
 
 
 26
 United States v. Leon, 534 F.2d 667, 679 (6th Cir.1976).
 
 
 27
 Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982) (en banc) (citations omitted).
 
 
 28
 The prosecutor's brief reference in closing argument to a comparison between petitioner and Hitler was improper and we do not wish to be viewed as countenancing this kind of prosecutorial conduct. We believe that it had only a slight tendency, however, to mislead or divert the jury from the real issues. Remarks about the victims' terror and the effect on their family did shift the focus from the question of petitioner's guilt, but both were relatively isolated. The comparison to Hitler was made in conjunction with the evidence which indicated that petitioner had little compunction about lying to evade responsibility for his actions. In these instances, the prosecutor touched on the subject for a few moments and did not return to it. Finally, and most telling, the evidence against petitioner was overwhelming. Witnesses placed him in the vicinity of the victims' home with a gun, he was seen driving their car, he confessed to the shooting more than once, and he led officers to the place where the murder weapon was hidden. We hold that the prosecutor's statements were not "so egregious as to render the trial fundamentally unfair." Angel, 682 F.2d at 608.
 
 VI.
 
 29
 The order of the district court denying the petition for a writ of habeas corpus is AFFIRMED.