966 F.2d 1452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gary L. LUCE, Petitioner-Appellant,
v.
Terry L. MORRIS, Respondent-Appellee.
 No. 91-4064.
 United States Court of Appeals, Sixth Circuit.
 June 9, 1992.
 
 Before KENNEDY and SUHRHEINRICH, Circuit Judges, and WEBER, District Judge.*
 PER CURIAM.
 
 
 1
 Gary Luce appeals from the district court's denial of his petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Finding no merit in Luce's appeal, we affirm.
 
 
 2
 * According to the Lucas County Common Pleas Court:
 
 
 3
 [t]he incident giving rise to this appeal occurred on October 27, 1985 at approximately 9:30 p.m. On that date appellant, Gary L. Luce, entered the Franklin Ice Cream Store, located at 1205 Broadway in Toledo, Ohio, together with two relatives, Donald Reed and Thomas J. Schooner. All three proceeded to the back of the store, removed beer from the coolers and proceeded to the front of the store. The store manager, Jackie Watkins, and her assistant, Laura Santabanez, accompanied appellant to the front of the store.
 
 
 4
 Upon reaching the front of the store, Ms. Watkins stepped in front of the door and asked appellant to put the beer on the counter. At this point there is a conflict in the evidence as to whether or not appellant attempted to pay for the beer. In any event, the confrontation between Ms. Watkins and appellant continued and finally ended when appellant swung one of the six packs of beer which he was holding in his left hand and hit Ms. Watkins in the face.
 
 
 5
 Luce was convicted of robbing the ice cream store and was sentenced to twelve to fifteen years imprisonment. Luce's appeals to the state appellate courts were unsuccessful.
 
 
 6
 This habeas corpus case arises out of Schooner's plan to offer exculpatory testimony at Luce's robbery trial. Schooner's attorney, Laura Damrauer, opposed her client's decision to appear at Luce's trial. Charles Sallah, the local prosecutor, spoke with Schooner in an effort to find out what he knew. Sallah talked with Schooner in Damrauer's presence for approximately five minutes. Among the things Sallah reportedly told Schooner was that if Schooner's testimony was inculpatory he also would be prosecuted.
 
 
 7
 Schooner decided the better course was to invoke his Fifth Amendment right against self-incrimination rather than testify at Luce's trial. So Luce was left without whatever benefit Schooner's testimony would have provided. Luce claims that absent Sallah's intervention Schooner might have provided testimony effecting a change in the outcome of the trial. Luce describes Sallah's conversation with Schooner as prosecutorial misconduct in violation of Luce's right to compulsory process under the Sixth and Fourteenth Amendments.
 
 
 8
 This matter was referred to a magistrate for a report and recommendation, the result of which was to recommend granting the writ of habeas corpus. The district court rejected the magistrate's recommendation due to a belief "that Sallah's conduct did not rise to the level of prosecutorial misconduct and did not substantially interfere with Luce's right to call witnesses on his own behalf." Luce describes the district court's rejection of the magistrate's factual findings without a de novo hearing as reversible error.
 
 II
 
 9
 The Supreme Court has emphasized the narrow scope of habeas corpus review:
 
 
 10
 This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel ... or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right.... When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them. But here the claim is only that a prosecutor's remark about respondent's expectations at trial by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process.
 
 
 11
 Donnelly v. De Christoforo, 416 U.S. 637, 643 (1974).
 
 
 12
 Before habeas relief is granted, the alleged impropriety must be evaluated under the totality of the circumstances surrounding each individual case. Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982) (en banc). We are mindful of our limited standard for review and "that we do not sit as an appellate court rectifying trial errors but only to ensure fundamental fairness." Id. Finally, we note the "extreme nature of prosecutorial misconduct required for a federal court to issue the writ." Id. at 609 (quoting Cook v. Bordenkircher 602 F.2d 117, 120 (6th Cir.), cert. denied, 444 U.S. 936 (1979)).
 
 
 13
 Applying Angel, we find no prosecutorial misconduct warranting issuance of the writ in this case. First, Schooner reported that he elected not to testify on Luce's behalf because he feared incarceration. His fear was induced by, among other reasons, his own attorney's warnings about charges that would follow any inculpatory statements. Attorney Damrauer even showed him a list of charges that would be filed if he offered such testimony. For Sallah to supply Schooner with information about what might occur in the event of self-incriminating testimony is not to commit prosecutorial misconduct.
 
 
 14
 Second, the proof against Luce was relatively strong. Watkins testified that Luce stole beer and struck her before fleeing from the store. Watkins' testimony was corroborated by a fellow employee, Laura Santabanez. The jury deliberated only twenty minutes before reaching its verdict.
 
 
 15
 In light of all these facts, the actions of Sallah fall considerably short of the kind of misconduct warranting issuance of habeas corpus relief. Given the direct testimony by Watkins and Santabanez against Luce, we are convinced that any prosecutorial error was harmless. See Eberhardt v. Bordenkircher, 605 F.2d 275, 278 (6th Cir.1979).
 
 III
 
 16
 Reed testified in support of Luce and was promptly arrested. The magistrate's report found that Schooner's decision not to testify was made after he viewed the arrest of Donald Reed. The district court rejected this factual finding. The district court found that the magistrate misread the evidentiary hearing record and that Reed's arrest occurred after Schooner's decision not to testify. The result is that Reed's arrest could not have impacted Schooner's decision. Luce describes the district court's rejection of a magistrate's factual finding without a de novo hearing as reversible error.
 
 28 U.S.C. § 636(b)(1) provides that a
 
 17
 judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.
 
 
 18
 The Supreme Court has held that "in providing for a 'de novo determination' rather than a de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. 667, 676 (1980).
 
 
 19
 A district court is not required to conduct a new evidentiary hearing before exercising its discretion to modify a magistrate's recommendation. Id. The statute does not demand that the court "rehear the contested testimony in order to carry out the statutory command to make the required 'determination.' " Id. at 674. We find the district court's rejection of a factual finding predicated on a misreading of the evidence to be within the court's statutorily authorized discretion.
 
 IV
 
 20
 For the foregoing reasons, the denial of Luce's petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 The Honorable Herman J. Weber, District Judge for the Southern District of Ohio, sitting by designation