72 F.3d 130
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Steven R. PICKLE, Petitioner-Appellant,
v.
Michael DUTTON, Respondent-Appellee.
 No. 94-6437.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1995.
 
 Before KENNEDY and MOORE, Circuit Judges, and JOHNSTONE, District Judge.*
 OPINION
 KAREN NELSON MOORE, Circuit Judge.
 
 
 1
 Steven R. Pickle appeals the dismissal with prejudice of his habeas corpus petition. We affirm.
 
 I.
 
 2
 In 1982, Steven R. Pickle was tried for armed robbery in Tennessee state court. The prosecution mounted an extensive case, including two eyewitnesses, a confession, recovery of some of the stolen goods from Pickle's sister's car, and recovery of other stolen goods from Pickle's bedroom, the site of his arrest. In response, the defense called prison inmate Charles M. Stanley, with whom Pickle had previously served time. Stanley testified that he, not Pickle, had committed the robbery in question.
 
 
 3
 To impeach Stanley's testimony, the state produced a letter that Pickle, while an inmate at a Nashville prison, had given a fellow prisoner for delivery to Stanley. The letter read:
 
 
 4
 I talk with my Mom yesterday and she said if I do go on trial, she will see that you received half before, and the other half after the trial. I gave her your Brother name and there will be no problem in the matter. Hey, it will be worth every penny if you do what you say you do. I'm going to need all the help I can get. Charlie, just remember this. You don't know me, and I have NEVER talk with you in the pass. I don't think that they would know we was in Jail together in 81, do you?
 
 
 5
 Unbeknownst to Pickle or Stanley, a prison guard had intercepted and photocopied the letter before allowing it to be delivered.
 
 
 6
 The introduction of this letter apparently took Pickle's attorneys by surprise, and they immediately moved to withdraw. The trial judge denied the motion. In an effort to avoid the knowing introduction of perjured testimony, the attorneys then chose not to call their final witness, James Slate. Slate had previously admitted participating in the robbery and was prepared to testify that Stanley had been his accomplice.
 
 
 7
 In response to Pickle's objections to his counsel's decision, the trial judge decided to call Slate as the court's witness and to allow Slate to make whatever statement he wished. As expected, Slate testified that Stanley, not Pickle, had participated in the robbery. The prosecution then impeached this testimony by introducing a transcript of the hearing at which Slate had pleaded guilty, which showed that he had then identified Pickle, not Stanley, as his cohort.
 
 
 8
 The jury convicted Pickle and sentenced him to seventy-five years in prison. Pickle unsuccessfully challenged this judgment on direct appeal and through Tennessee's post-conviction relief procedure. He then filed a petition for a writ of habeas corpus in federal district court. The district judge found the habeas claims to be meritless and dismissed the petition with prejudice. On appeal, Pickle claims that improper prosecutorial comments during closing argument and ineffective assistance of counsel violated his right to due process, resulting in an excessively long sentence.
 
 II.
 
 9
 A state prisoner may not petition the federal courts for a writ of habeas corpus without first giving the state court system a chance to address the claims. 28 U.S.C. Sec. 2254(b), (c). This requirement is not satisfied unless the petitioner has alleged the same errors, based on the same legal theories, in state proceedings. Pillette v. Foltz, 824 F.2d 494, 497 (6th Cir.1987). For example, a petitioner has not exhausted his state remedies for all ineffective assistance of counsel claims if the state courts were presented with only one aspect of his attorney's performance. See id. at 497-98. Therefore, although Pickle clearly alleged prosecutorial misconduct and ineffective assistance of counsel in state court, we must determine whether Tennessee has had a chance to examine the specific individual claims he brings before this court.
 
 
 10
 A thorough examination of the petitions, briefs, opinions, and other documents from prior proceedings reveals that several of the errors Pickle alleges here were never presented to the Tennessee courts. In particular, Pickle never challenged in state court either on appeal or in post-conviction proceedings the propriety of prosecutorial comments regarding (1) his failure to testify, (2) misconduct on the part of defense counsel, or (3) the threat Pickle posed to the jury and its community. With respect to these issues, state remedies are no longer available to Pickle. See Tenn.Code Ann. Secs. 40-30-202, -217 (1995). Therefore, his failure to raise these claims before the state courts amounts to a procedural default. See Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Rust v. Zent, 17 F.3d 155, 160 (6th Cir.1994). We will not review habeas claims that have been procedurally defaulted unless the petitioner either shows cause for the default and actual prejudice resulting from the alleged violation of federal law or demonstrates that a fundamental miscarriage of justice would result from our failure to consider the claims. Coleman, 501 U.S. at 750.
 
 
 11
 Pickle has offered no explanation for his default and has therefore failed to show cause. He has also not demonstrated that our failure to consider the three defaulted claims would result in a fundamental miscarriage of justice. Although we find that the prosecutor's closing remarks regarding the threat Pickle posed to the jury's personal safety were improper, the Supreme Court has indicated that the fundamental miscarriage of justice exception is implicated only in rare and extraordinary cases, such as when the petitioner is actually innocent or is wrongfully sentenced to death. See, e.g., Schlup v. Delo, 115 S.Ct. 851, 864-65 (1995). In contrast, Pickle's sentence, while long, was not even the harshest he might have received. See Tenn.Code Ann. Sec. 39-2-501 (repealed 1989). We decline to apply the fundamental miscarriage exception in this case. Pickle's three defaulted claims are therefore unfit for habeas review. See Coleman, 501 U.S. at 750; Rust, 17 F.3d at 160.
 
 III.
 
 12
 We now turn to the claims that were previously presented to the state courts, keeping in mind that habeas review does not guarantee an error-free trial. See Clemmons v. Sowders, 34 F.3d 352, 358 (6th Cir.1994). We examine the record for any defect that had a substantial and injurious effect on the proceedings and that resulted in actual prejudice to the petitioner. See Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993); Clemmons, 34 F.3d at 354.
 
 
 13
 Pickle contends that various trial errors adversely affected the jury's sentence determination, resulting in an excessively long prison term. To support this argument, he cites a report, Bob Day, Sam Gillespie & Al Pearson, Discretion in Sentencing and Parole Board Decisions in Tennessee: 1960-1969 app. 4 (1972), which studied the average length of sentences for armed robbery in the 1960s. Nonetheless, any comparison between Pickle's 1984 sentence and the sentences of armed robbers from the 1960s is of negligible probative value.
 
 
 14
 Furthermore, none of the incidents that allegedly prompted the jury to impose a seventy-five year sentence merits habeas relief. First, the prosecution's reference during closing argument to Pickle's failure to call certain potential defense witnesses was not necessarily improper, and in any event the defense failed to object. Second, it is true that the prosecution argued outside the record in trying to explain the absence of fingerprint evidence, but given the overwhelming evidence of guilt this impropriety had a negligible effect. Third, when the prosecution vouched for a witness's honesty, the judge immediately responded to Pickle's objection with a curative instruction.
 
 
 15
 In short, the prosecution's conduct was not "so egregious as to render the trial fundamentally unfair." See Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982) (en banc). Rather, the comments tended to be isolated and inadvertent, with little possibility of misleading the jury. See id. Furthermore, this conduct did not particularly relate to the jury's determination of length of sentence, which is the issue on which the instant habeas petition is based.
 
 
 16
 Pickle also raises an ineffective assistance of counsel claim to justify issuance of the writ. Specifically, he attacks his counsel's failure to object to introduction of his incriminating letter because "[a] legal basis for its exclusion existed." See Petitioner's Br. at 32. Pickle is presumably referring to Tennessee Rule of Criminal Procedure 16, which provides for disclosure to the defendant of evidence that the prosecution intends to use at trial. If evidence subject to a Rule 16 request has not been disclosed prior to trial, the trial judge may permit inspection of the evidence at trial, grant a continuance, prohibit the introduction of the evidence, or "enter such other order as it deems just under the circumstances." Tenn.R.Crim.P. 16(d)(2).
 
 
 17
 Claims of ineffectiveness of counsel do not merit habeas relief unless the "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984); see also Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993) (finding no prejudice to criminal defendant unless "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). Pickle's counsel's failure to oppose the introduction of the previously undisclosed evidence can hardly be said to have prevented a just result; after all, the letter exposed Pickle's attempt to mislead the court through introduction of perjured testimony. In fact, "counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." Nix v. Whiteside, 475 U.S. 157, 166 (1986); see also McCoy v. Court of Appeals of Wis., 486 U.S. 429, 436 (1988) ("Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law."). Given their precarious ethical position and apparent surprise at the existence of a perjury stratagem, Pickle's attorneys served him as well as could be expected.
 
 
 18
 Furthermore, there is no constitutional right to disclosure of this evidence. Although the Supreme Court has held that the prosecution's suppression of material exculpatory evidence violates due process, see Brady v. Maryland, 373 U.S. 83, 87 (1963), that holding is rooted in the view that a criminal trial is a search for the truth. See id. at 86; see also United States v. Agurs, 427 U.S. 97, 104 (1976) (emphasizing "truth-seeking function of the trial process"); Giglio v. United States, 405 U.S. 150, 153 (1972) (focusing on "deliberate deception of a court and jurors by the presentation of known false evidence"). Extending the Brady principle to afford Pickle habeas relief because he was unable to carry out his perjury plan would be inconsistent with this truth-seeking function. We will not grant habeas relief on these grounds.
 
 
 19
 For the foregoing reasons, we AFFIRM the district court's dismissal of Pickle's habeas corpus petition.
 
 
 
 *
 The Honorable Edward H. Johnstone, United States Senior District Judge for the Western District of Kentucky, sitting by designation