James R. SWOFFORD, Petitioner–
Appellant,

v.

George E. DETELLA, Warden,
Respondent–Appellee.

No. 95–2446.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1996.

Decided Dec. 6, 1996.

Rehearing Denied Feb. 3, 1997.

---

Jerold S. Solovy, Robert T. Markowski, Brent E. Kidwell (argued), Jenner & Block, Chicago, IL, for Petitioner-Appellant.

Catherine Glenn (argued), Office of the Attorney General Criminal Appeals Division, Springfield, IL, for Respondent-Appellee.

Before CUMMINGS, ESCHBACH, FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

James Swofford was sentenced to thirty years of imprisonment largely on the strength of the testimony of a five-year-old child, who was three at the time the events testified to transpired. No reviewing court has, to date, seen reason to reverse the conviction. Swofford now petitions this court for a writ of habeas corpus. We deny the writ.

## I.

Swofford was convicted of aggravated sexual assault for anally raping a young boy, J.S., who was three at the time of the attacks and five at the time of trial. Swofford lived with J.S.'s family for a short time and baby-sat J.S. and his two siblings. All of the children were reportedly neglected and abused. The Department of Children and Family Services (DCFS) removed the children from their home in 1988. Because the children acted out sexually, the DCFS worker suspected that they had been sexually abused. Physical examinations by a doctor and interviews with a nurse and DCFS workers indicated that incest had gone on in J.S.'s family for a prolonged period. J.S. made allegations of sexual abuse against his mother, father, and Swofford.

A grand jury charged J.S.'s parents and Swofford with abuse of J.S. The parents pled guilty to "improper supervision of a child." Swofford went on to trial.

At trial, J.S. testified against Swofford—quite graphically, but with some confusion as to times and places. The State also put on two DCFS agents, who had investigated J.S.'s family, a physician, who had examined J.S., and a nurse, who had interviewed J.S. The two investigators testified that J.S. had told them that he had been assaulted; they did not identify Swofford as the perpetrator. The nurse testified that J.S. had told her that "Jim Bob" (Swofford's nickname) had hurt him. The doctor testified that physical evidence suggested that J.S. had been assaulted. Thus, J.S. was the only witness to directly connect Swofford to the abuse. The defense put on one witness, J.S.'s grandmother. She testified to nothing of any moment, but that J.S. had suffered health problems. Swofford did not take the stand in his defense.

At trial, none of the evidence that J.S. had been assaulted by family members was admitted. The trial judge determined that the Illinois rape shield law prohibited the introduction of such evidence. In closing arguments, the prosecutor fashioned an argument that J.S.'s explicit description of anal rape strengthened the case against Swofford: a five-year-old boy would not normally be in possession of such knowledge unless attacked by Swofford. The prosecutor made this argument with knowledge that J.S. had accused his father of rape. The defense did not object. The jury convicted Swofford in forty-five minutes.

Swofford appealed his conviction on three grounds: (1) the trial court erred in finding J.S. competent to testify; (2) the defense attorney's failure to develop evidence that J.S.'s sexual knowledge came from elsewhere, coupled with his failure to object during closing arguments, constituted ineffective assistance of counsel; (3) the prosecutor's closing remarks denied Swofford a fair trial. The state appellate court rejected all three claims and affirmed the conviction.

Swofford now argues before this court two of the three issues raised on direct appeal: ineffective assistance of counsel and prosecutorial misconduct. We address each of his claims in turn.

## II.

Swofford claims that his trial attorney's failure to elicit evidence that J.S. had been sexually abused by others, and his attorney's failure to object to the prosecutor's attributing J.S.'s knowledge of sexual abuse to Swofford's alleged attacks amounted to ineffective assistance of counsel. To succeed under the new habeas provision, enacted by Section 104 of The Anti–Terrorism and Effective Death

Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, Swofford must show that the adjudication of his claim in the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (1996); *Lindh v. Murphy*, 96 F.3d 856, 861 (7th Cir.1996). The controlling Supreme Court precedent concerning the effective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail under *Strickland*, Swofford must show that his attorney's advocacy (1) fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. at 2064, and that (2) the counsel's deficiencies altered the outcome of the proceedings, *id.* at 691, 104 S.Ct. at 2066. Citing the status of the rape shield laws and an attempt at cross-examination by defense counsel, the state appellate court found Swofford's representation within the range of professional, competent assistance, and thus short of the first prong of the *Strickland* test. For the reasons stated below, we conclude that the state appellate court decision cannot be labeled unreasonable.

■ First, we address Swofford's claim that his counsel failed to develop evidence that J.S. had been abused by other adults. Such evidence might have been of substantial help to a seemingly weak defense: evidence of other sexual assaults upon J.S. might have explained away both the physical evidence of J.S.'s abuse and J.S.'s advanced sexual knowledge. Arguably, the jury could have been left with no external factors to corroborate J.S.'s testimony. While we recognize the potential of such a defense, we must limit our inquiry only to whether the state appellate court decision to find Swofford's representation "in the range of competent assistance" was unreasonable.

As noted by the state appellate court, Swofford's counsel was aware of this avenue of argument, but was precluded from developing a defense based upon J.S.'s abuse by

others because of the trial judge's application of the Illinois rape shield law, Ill.Rev.Stat., ch. 38, para. 115–17 (1987), which disallows the admission of evidence concerning the past sexual conduct of the victim. At trial, Swofford's counsel attempted to cross-examine a DCFS agent about allegations of abuse by others made to her by J.S. The prosecutor objected; the objection was sustained on the basis of the rape shield law.[1] This thwarted attempt by the defense reflects an effort to bring evidence of J.S.'s abuse to light and places defense counsel within the realm of reasonable assistance.

■ Swofford maintains that this futile attempt at cross-examination was not enough. He asserts that his counsel should have argued that Swofford's confrontation rights override the rape shield law. Although no Illinois case supported this proposition at the time of trial, Swofford's counsel could have relied upon the analogous case of *Davis v. Alaska*, 415 U.S. 308, 320, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347 (1974), which held that the Sixth Amendment right to confront witnesses overrode the state's policy interest in protecting the criminal records of juvenile offenders.

We cannot disagree with the reasonableness of the state appellate court's decision that counsel's failure to advance this argument does not constitute deficient performance within the meaning of *Strickland*. While the *Davis* theory may have been a viable strategy, the fact of the matter is that the relation between the confrontation clause and the Illinois rape shield law was unsettled law at the time. The application of the rape shield law to a child who has suffered prolonged abuse at the hands of adults may seem a distortion of its purpose. However, the trial judge ruled that it was applicable in this instance. Vigorous argument at the trial level and further airing of the issue upon appellate review would have been welcome. However, we cannot fault the state appellate court for not demanding of trial counsel that he sail uncharted waters.

---

1. The state contends that there was some pretrial discussion of the rape shield law in addition to this one instance on cross-examination. From the trial transcript, it is not readily apparent that these discussions actually transpired.

■ Second, Swofford contends that his attorney's failure to object to the prosecutor's closing remarks, in which the prosecutor improperly argued that an assault by Swofford was the only way through which J.S. could have known about and been able to describe anal rape, amounted to ineffective assistance of counsel. With hindsight we recognize the imprudence of counsel not to preserve this trial error for appeal. Nevertheless, we again must confine ourselves to examining the reasonableness of the state appellate court decision. Incorporating its earlier discussion of the rape shield law, the state appellate court rejected Swofford's claim. The rape shield law does not account for counsel's failure to object. We accept the state court result as reasonable for another reason—because we cannot rule out the possibility that counsel's reticence was some form of trial strategy.

The *Strickland* test is "highly deferential" to the decisions of trial attorneys. To prevail the petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). We, of course, are not privy to the motivations of Swofford's defense counsel. However, we can imagine that his silence was deliberate. Any objection from defense counsel during closing could have highlighted for the jury the prosecutor's argument. It might have seemed to Swofford's counsel that opting not to draw attention to such damning reasoning, without the ability to bring in evidence to explain it away, was the better course. Thus, we cannot say with any degree of certainty that Swofford's counsel was asleep at the switch, but rather must allow for the possibility that his failure to object was a strategic choice.

### III.

Swofford asks this court to review the state appellate court's decision that the prosecutor's closing remarks did not deprive him of a fair trial. Before addressing the merits of this claim, we address the government's contention that this issue has been procedurally defaulted.

■ If a state court does not reach a federal issue because of a state procedural rule, the federal court may not examine the matter on a writ of habeas corpus absent a showing of cause and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977); *Willis v. Aiken,* 8 F.3d 556, 561 (7th Cir.1993). However, federal courts have not always been able to discern from the face of a state court opinion whether the court actually relied upon a state procedural bar or whether the court reached the merits of the federal claim. *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983); *Willis,* 8 F.3d at 561. Reluctant to entangle the federal judiciary unnecessarily in deciphering state law claims, the Supreme Court has placed the burden on state courts to make clear on what grounds, state or federal, they base their decisions. "In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition." *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991).

■ In the instant case, petitioner's trial attorney made no objection to the prosecutor's closing remarks nor did he later seek a remedy. Illinois requires a contemporaneous objection to an error at trial and a written post-trial motion raising the trial error to preserve an issue for appeal. *People v. Enoch,* 122 Ill.2d 176, 119 Ill.Dec. 265, 271, 522 N.E.2d 1124, 1130 (1988). Thus the state appellate court could have barred Swofford from bringing his claim. The state appellate court noted petitioner's failure to object at trial or file a post-trial motion; however, the court did not limit itself to a discussion of the state procedural bar, but went on to consider the merits of Swofford's charge of prosecutorial misconduct. Accordingly, we may address ourselves to Swofford's allegation of prosecutorial misconduct.

Below, we excerpt passages from the prosecutor's closing remarks of which Swofford complains:

> I sat here and heard that description of what that little boy gave as to what happened in his mom's bedroom that day, and he used the best words he had command of, the best words he could grasp, to describe a violent, anal sexual assault that was perpetrated on him by this man. There is no other circumstance, ladies and gentlemen, that could have happened to that little five year old boy—three years old when its happened—that describes this situation other than what I have just alleged and what we have charged this man with.

> \*   \*   \*   \*   \*   \*

> And you have to bear in mind, too, that at five years of age, [J.S.] should not have the kind of sexual knowledge that he showed you while he testified.

> \*   \*   \*   \*   \*   \*

> [on rebuttal to defense's closing argument]

> [J.S] corroborated himself from his description of the event that happened. And if this event didn't happen, ladies and gentlemen, where did he get the information what happened to him to make him dream up this wild, bizarre set of circumstances?

The Supreme Court standard for evaluating prosecutorial misconduct is laid out in *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). In *Darden,* the Supreme Court considered the following factors as relevant to determining whether a petitioner has been deprived of a fair trial: (1) whether the prosecutor's arguments manipulated or misstated the evidence; (2) whether the remarks implicated specific rights of the accused, such as the right to remain silent; (3) whether the defense invited the response; (4) the instructions of the trial court; (5) the weight of the evidence against the petitioner; and (6) whether the defense was afforded an opportunity to rebut the remarks. *Id.* at 181–82, 106 S.Ct. at 2471–72.

The state appellate court found that the prosecutor's closing remarks did not substantially prejudice Swofford. In its review, the court placed great weight on J.S.'s testimony: "Though the victim had a speech impediment and was unclear regarding some of the details, his testimony as to what was done to him and who did it was clear and unequivocal." It further found that by impugning J.S.'s credibility, the defense invited the prosecutor's comments. Finally, the state appellate court found that the sum total of the testimony of J.S., the DCFS agents, the nurse, and the doctor, amounted to "sufficient evidence[ ] to support the conviction." To grant Swofford's petition, we must determine that this decision is unreasonable in light of *Darden v. Wainwright.*

We first recognize that the prosecutor did manipulate the evidence in his closing arguments. Because of the rape shield law, the jury only knew a portion of the abuse committed against J.S. Because of the grand jury investigation and resulting criminal proceedings, the prosecutor knew that J.S. had accused his father of anal rape, and therefore knew that an assault by Swofford was not the only way J.S. could have been in possession of such advanced sexual knowledge. By arguing that J.S.'s knowledge could only have been the result of an assault by Swofford, the prosecutor made the evidence appear to stand for a proposition that he knew to be inaccurate.

Second, we inquire whether the defense invited the remarks. The defense did seek to undermine J.S.'s credibility. In opening argument, the defense suggested that J.S. was motivated to invent the story because it would allow him to live in a more comfortable home than the home of his natural parents. This theory is not developed in testimony, nor is it revived in closing arguments. While a stillborn argument, the opening remarks are enough to plant the seeds of doubt as to J.S.'s trustworthiness in a juror's mind. In addition, in closing, the defense suggested that J.S. had been primed and his testimony rehearsed. By these remarks, the defense did invite testimony that would bolster J.S.'s credibility. However, because the defense invited such argument, we cannot accept that

they deserved the prosecutor's tailored comments. Accordingly, we do not place the same weight on this invitation or "open door" as did the state court.

Third, we ask whether the trial court offered any curative instructions. The record indicates that some jury instructions were read to the jury, but the substance of these instructions was not reported. The state appellate court writes that "the jury was properly instructed that closing arguments were not evidence." With no record before us, we do not know to what extent the excesses of the prosecutor's closing arguments were corrected by prudential instructions from the court. However, "determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and thus we accept that some curative instructions were administered to the jury.

Fourth, and most significantly, we address the weight of the testimony heard against Swofford. The testimony of the doctor, nurse, and DCFS agents established that J.S. had been abused. The question is by whom. Accordingly, we center our discussion upon J.S.'s testimony, the principal link to Swofford. We agree with the state appellate court that J.S. implicated Swofford and explained what was done to him clearly and unequivocally. He identified Swofford in the court room and testified as to the following:

Q. What happened? Are you telling the truth now?

A. He put the wiener in my butt.

\* \* \* \* \* \*

Q. Okay. Did anything come out of his wiener, [J.S.]?

A. Pee.

\* \* \* \* \* \*

Q. What color was the pee?

A. White.

\* \* \* \* \* \*

Q. Did you see anything else on his wiener?

A. Red.

\* \* \* \* \* \*

Q. What was causing the red?

A. Probably just this blood on him.

\* \* \* \* \* \*

Q. Whose blood was it?

A. Mine.

However, not all of J.S.'s testimony was clear and unequivocal. On cross-examination, J.S. responds to questions of circumstance with considerable confusion.[2] For example, J.S. testifies,

Q. [J.S], can you tell where this [assault] happened?

A. Yesterday. Yesterday. Tomorrow.

\* \* \* \* \* \*

Q. And one [assault] was around Christmas-time?

A. It was five days. One, two, three, four five. It was just seven, eight, nine, ten. Ten days.

Perhaps even more worrisome to any finder of fact than these confused responses should have been that immediately after being excused from the witness stand, J.S. asked, "Did I tell the truth?"

Although this child's testimony gives us substantial pause, the jury found it credible. It was enough for the state appellate court that J.S. was able to say what was done to him and who did it. We, given the same reviewing authority, might have come to a different conclusion. The evidence connecting Swofford to the crime, essentially J.S.'s testimony, taken in the context of his total testimony, is not overwhelming. Reading the record and explanatory appellate briefs, one might be tempted to take comfort in the total absence of evidence exonerating Swofford. This we are not permitted. Instead, the inquiry under *Darden* is whether the jury was unduly influenced by the prosecutor's argument. *Id.* at 182–83, 106 S.Ct. at 2472. At trial, the jury did not know what we now know concerning abuse of J.S. by others. All of the evidence of abuse—the

---

**2.** We note that the DCFS investigation was never able to determine when and where the abuse took place.

testimony of the doctor, nurse, DCFS workers—was presented to support defendant's guilt. Thus the evidence adduced at trial against Swofford appeared very strong, and it is unlikely these parting shots by the prosecutor made the difference.

Finally, the defense did have the opportunity to lessen the impact of some of the prosecution's remarks. In its closing, the defense had the chance to argue something to the effect of: "this child has clearly been abused, we do not know by whom." Instead, the defense took the questionable tack that no abuse occurred at all and forfeited the opportunity to repair the damage done by the prosecutor's line of reasoning.

*Darden* asks of a direct reviewing court to undertake a rather daunting balancing act. Working with a cold record, such a body weighs the six suggested criteria mentioned above. On a petition for writ of habeas corpus, we federal judges are not asked to undertake the exact challenge, but rather have the difficult task of assessing the reasonableness of the judgment of a panel of state appellate judges who have examined the evidence with the aid of these indeterminate standards.

This case is a snapshot into the sordid world of sex crimes against children and a criminal justice system ofttimes ill-equipped to deal with the consequences. To further complicate the picture, the record suggests less than stellar performances on the part of trial counsel. Nonetheless, it is not for us to retry this case. We may only exercise our judgment over a narrow ground: the reasonableness of the state court's decision on the issue of prosecutorial misconduct. Given the competing signals emerging from our *Darden* analysis and the constraints and limited mandate of our habeas review, *see* 28 U.S.C. § 2254(d)(1) (1996); *Lindh v. Murphy,* 96 F.3d 856, 861 (7th Cir.1996), we are unable to conclude that it was unreasonable for the state appellate court to determine that the prosecutor's statements did not deprive Swofford of a fair trial.

This case leaves us troubled, but addressing this concern is beyond our reach on this habeas petition. Because of the Illinois rape shield law, the trial judge ruled inadmissable evidence of sexual abuse of J.S. at the hands of his parents. From this ruling flowed the consequences that were the basis for Swofford's petition. With no middle ground, Swofford's counsel chose the unrewarding defense that no abuse occurred. The prosecutor was able to use the law, not as a shield, as it was designed, but as a sword. The physical evidence and J.S.'s advanced sexual knowledge achieved a prominence that would not have been possible had a more complete story unfolded. Swofford did not appeal this evidentiary ruling. Illinois provides its own post-conviction procedures to explore appellate counsel's failure to raise a constitutional question surrounding the trial court's application of its state's rape shield law—a route not taken. In any event, it is an issue not properly before this court.

For the reasons stated above, we AFFIRM the decision of the district court and deny Swofford's petition for a writ of habeas corpus.