*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0144P (6th Cir.)
File Name: 00a0144p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHAEL MAURINO,
    *Petitioner-Appellant,*

v.                                                    No. 98-1332

RICHARD JOHNSON, Warden,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-71622—Lawrence P. Zatkoff, Chief District Judge.

Argued: September 20, 1999

Decided and Filed: April 24, 2000

Before: KENNEDY and NORRIS, Circuit Judges;
HOLSCHUH[*], District Judge.

---

**COUNSEL**

**ARGUED:** James Sterling Lawrence, Detroit, Michigan, for Appellant. Vincent J. Leone, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing,

---

[*]The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

1

Michigan, for Appellee.  **ON BRIEF:**  James Sterling Lawrence, Detroit, Michigan, for Appellant.  Vincent J. Leone, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

KENNEDY, J., delivered the opinion of the court, in which NORRIS, J., joined.  HOLSCHUH, D. J. (pp. 19-26), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

KENNEDY, Circuit Judge. Petitioner, Michael J. Maurino, appeals the District Court's denial of his request for a writ of habeas corpus.  Following a jury trial in the Detroit Recorder's Court, petitioner was found guilty of second-degree murder, M.C.L. § 750.317, M.S.A. § 28.549, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b, M.S.A. § 28.424(2).  He was sentenced to twenty-five to seventy-five years imprisonment for the murder conviction plus two years consecutive imprisonment for the felony-firearm conviction.  Petitioner filed a motion for a New Trial and a Motion to Set Aside the Sentence and for Resentencing, which were denied.  Petitioner, then appealed to the Michigan Court of Appeals, which affirmed his conviction.  The Supreme Court of Michigan denied petitioner's request for leave to appeal.  He then filed a habeas petition in state court, which was denied, as were his subsequent state appeals. After exhausting his state remedies, petitioner filed a petition for a writ of habeas corpus in federal court. The district court denied this petition and the petitioner appealed.  On appeal petitioner raises three issues:  (1) whether petitioner was denied a fair trial due to the bias of the trial judge against defense counsel; (2) whether petitioner was denied the effective assistance of counsel where a critical defense witness was not called; and (3) whether the trial prosecutor improperly acted as a witness depriving petitioner

said the petitioner had given her a bullet with the statement that "this one's for Vicki," thereby resulting in a substantial and injurious influence on the verdict. Since there is grave doubt as to whether the prosecutorial misconduct created a substantial and injurious influence on the verdict, the error was not harmless. Accordingly, then, the Michigan Supreme Court engaged in an unreasonable application of *Chapman's* harmless error test, and under § 2254(d), a writ of habeas corpus should issue.

Also, even more recently, this Court held that an inflammatory cross-examination of the defendant and an improper closing argument (less egregious in my view than the prosecutorial misconduct in the present case), required the granting of a conditional writ of habeas corpus. In *Boyle v. Million*, 201 F.3d 711 (6th Cir. 2000), this Court said:

It is true that the case against Boyle was relatively straightforward and strong. Given the egregious and inflammatory nature of the behavior and arguments of the prosecutor throughout trial, however, we are left with "grave doubt" as to whether the prosecutorial errors "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed.2d 353 (1993)(*quoting Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946)); *see also O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L. Ed.2d 947 (1995).

*Id.* at 717-18.

For the reasons stated above, I would reverse the judgment of the District Court and order that a conditional writ of habeas corpus be granted unless the State of Michigan commences trial proceedings against Maurino within 180 days of this opinion.

of his constitutional right to confrontation, by asserting without evidence that petitioner told a waitress he intended to kill the victim. Because we find that reasonable jurists could find the state court's decision to be a reasonable application of Supreme Court law, we shall affirm.

## I.  Facts

On August 6, 1984, petitioner went to the Silver Cricket Lounge to see the victim, Vicki Lynn Lee. Prior to arriving at the lounge, petitioner consumed both cocaine and alcohol and while at the lounge, petitioner continued to consume alcohol. Petitioner and the victim left the lounge together around 2:00 a.m. Approximately a half hour after leaving the lounge, petitioner brought the victim to Westland Medical Center because she had been shot. On September 2, 1984, the victim died from the gunshot wound. Petitioner conceded that he was with the victim when she was shot and that the gun in his possession was the weapon which discharged the bullet. Petitioner, however, contended that the incident was an accident and that he was not aware that the gun was loaded.

Petitioner made two verbal and one written statements to police about the incident. The first statement occurred at the hospital immediately following the shooting. Upon bringing the victim into the hospital, the petitioner told the security guard on duty that he had shot the victim and that it was an accident. The police were called and petitioner was given Miranda warnings. Petitioner admitted to shooting the victim and stated that the gun discharged after he had racked the gun. He said that he and the victim had been arguing and that he had exited the car. The victim followed him in the car as he walked and convinced him to get back inside the vehicle. They began arguing again and the petitioner hit the windshield three or four times. He then withdrew a handgun from his jacket and racked the gun, removed the clip and pointed the gun at her. He said to the victim, "You see how mad you make me? You see what you make me do? See

what you can make me do?"  At that point, the gun discharged.

He was arrested for investigation of a homicide and transported to the police station.  At the police station, the petitioner was interrogated.  In response to questioning by the police, he gave a more detailed description of the events of the evening.  Prior to giving this statement he again was advised of his Miranda rights.  He also responded in the affirmative to an inquiry as to whether he was intoxicated.  In this second statement, he explained that he had been at a friend's home drinking when he received a call from his stepson indicating that his stepson knew where the petitioner's niece was located.  The petitioner stated that he had been looking for his niece for a couple of days and that he intended to bring her home once he found her.  Knowing that the individual who was with his niece was a dangerous man, the petitioner brought along a gun for protection.  Before going to find his niece, he stopped by the victim's place of employment to inform her of where he would be.  The victim requested that he stay until her shift ended and take her with him.  He complied and had a few drinks while he waited.  The victim and the petitioner left the lounge around 2:00 a.m. in a Pontiac Firebird.  He stated that he and the victim got into an argument about the manner in which the victim danced at her place of employment.  He said that in response to his comments, the victim lied to him and that this lying made him stop the car in a bowling alley parking lot.  Petitioner got out of the car and proceeded to walk away from the victim.  While in the parking lot, petitioner fired a shot in the air.  The victim requested that the petitioner return to the car and the petitioner agreed.  Once back in the car the petitioner attempted to unload the gun by removing the clip and racking the gun, which expelled a bullet.  The victim and the petitioner continued to argue and the petitioner hit the windshield a number of times. He also continued to play with the gun by racking it.  Sometime during the argument, the petitioner pointed the gun at the victim and stated, "See how mad you make me?"  The petitioner then racked the gun and the gun discharged.  At the end of the interrogation, petitioner

determining the jury's verdict," that error is not harmless.  And, the petitioner must win.

*Id*. at 436.

Citing *O'Neal*, this Court in the *Barker* case said:

Only if a federal habeas court can say with certainty that a trial error had little to no impact on the judgment, should the judgment stand.  *See id.* at 435-38, 115 S.Ct. at 994-995.  In this matter, the only thing of which this court is certain is that the erroneous jury instruction left the door wide open.  A reasonable juror could have very well walked through the door and rejected Barker's claim for self defense because that juror believed that Madsen's assault would not have led to death or serious bodily injury, thereby resulting in a substantial and injurious influence on the verdict.  Since there is grave doubt as to whether the erroneous jury instruction created a substantial and injurious influence on the verdict,  the error was not harmless.  Accordingly, then, the Michigan Supreme Court engaged in an unreasonable application of *Chapman's* harmless error test, and under § 2254(d), a writ of habeas corpus should issue.

199 F.3d at 874.

With only slight paraphrasing, this same language applies equally to this case:

Only if a federal habeas court can say with certainty that a trial error had little to no impact on the judgment, should the judgment stand.  *See O'Neal v. McAninch*, 513 U.S. 432 at 435-38, 115 S.Ct. at 994-995.  In this matter, the only thing of which this court is certain is that the prosecutorial misconduct left the door wide open. A reasonable juror could have very well walked through the door and rejected Maurino's claim that he did not intend to create a high risk of death or great bodily harm to his girlfriend because that juror believed the prosecutor's representation that there was an impartial person who

1999), in its interpretation of what must be shown to be an "unreasonable application of federal law," if a habeas petitioner can demonstrate that the trial error meets the *Brecht* standard, "he will surely have demonstrated that the state court's finding that the error was harmless beyond a reasonable doubt – the *Chapman* standard – was outside the realm of plausible credible outcomes, and therefore resulted from an unreasonable application of *Chapman*." *Nevers* at 371-372. In my view, this is such a case. The petitioner has shown that: (1) there is no indication whatsoever that the Michigan court applied the harmless error *Chapman* standard; (2) the prosecutorial misconduct meets the test of *Brecht*, if *Brecht* is to be applied, and was not harmless error; and (3) the Michigan court's decision therefore involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

It is my belief that two very recent decisions by this Court support the conclusion I have reached in this case. In *Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999), the petitioner for a writ of habeas corpus had been convicted of first degree murder in Michigan. The defense was that petitioner killed the decedent while resisting a rape. The error of the trial court was in refusing to instruct the jury that petitioner was entitled to use deadly force to resist an imminent rape. The Michigan Supreme Court denied the petition on the ground that the error was harmless because, under the evidence presented at trial, no reasonable juror could have believed deadly force was necessary to prevent a rape.

This Court reversed the district court's denial of habeas relief and ordered that a conditional writ of habeas corpus be granted unless Michigan commenced a new trial within 180 days of the opinion. This Court recognized the Supreme Court's decision in *O'Neal v. McAninch*, 513 U.S. 432 (1995), in which the Supreme Court emphatically stated:

When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had "substantial and injurious effect or influence in

provided the police with a written statement which conformed with the verbal statements he had made during the interrogation.

At the preliminary exam, the prosecutor proffered an expert witness to testify about the firearm used in this incident. The witness testified that he racked the gun fifty times and that this racking of the gun did not result in the discharge of the gun. He also testified that when the base of the gun was struck with a metal hammer four times the gun did discharge. Petitioner was present at the preliminary examination when this testimony was given.

At trial, the petitioner testified on his own behalf. His version of the events differed from his previous statements in some important ways. He stated that the first shot, in the bowling alley parking lot, was an unexpected gun discharge. He said that he was taking the gun out of his jacket when the gun discharged. In a previous statement, he stated that he had intentionally fired the gun in the air. He also clarified that he racked the gun while the clip was still in the gun; thus, explaining how the gun could eject one bullet from the chamber while placing another in the chamber. In addition, he stated that he could not remember how the gun discharged. He did not know whether he was hitting the windshield with the gun, but he did remember that he was playing with the gun prior to the gun discharging. Petitioner's testimony was the only evidence presented by the defense.

The prosecution offered not only the petitioner's prior statements as evidence, but also presented the testimony of numerous witnesses. The firearms expert testified to the same information that he presented at the preliminary hearing. The victim's father testified that he witnessed bruises on the victim's wrist when he visited her in the hospital. The prosecution, however, offered no medical testimony as to how or when these bruises occurred. Finally, the prosecutor presented the testimony of individuals who worked with the victim. None of these individuals were questioned about or testified to hearing the petitioner threaten the victim.

Nevertheless, on cross-examination of the petitioner, and after the prosecution had rested its case, the following exchange between the prosecutor and the petitioner took place:

Q:  And, when she [the victim] became a dancer, you knew the kind of place it was, is that right?
A:  Yes, I did.
Q:  In fact, you had been in the bar at an earlier – earlier times, when she was a waitress, isn't that right?
A:  Yes, I did.
Q:  Did you ever deliver a bullet to her?
A:  A what?
Q:  A bullet?
A:  No.
Q:  Didn't you in fact deliver a bullet to one of the waitresses, and say to her that, "This one's for Vicki," several – just a few months before this?
A:  No.
Q:  And, if someone came in, and testified to that effect, that –

Mr. Strauss [defense counsel]:  (Interposing) I'd object, this is improper cross-examination.

The Witness:    They'd be lying, because I've never done anything like that.

Mr. Strauss:  I'll withdraw the objection.

Ms. Petito [prosecutor]: Okay.

Q:  Now, let's – you in fact –
A:  (Interposing) Can I ask you something? How come you insinuate something like this, that is an out-and-out lie?

Ms. Petito:    Well, your Honor –

Mr. Strauss:  (Interposing) Your Honor –

error.  As the Supreme Court said in *Kotteakos v. United States*:

> The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error.  It is rather, even so, whether the error itself had substantial influence.  If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. 750, 765 (1946).

The majority states that if petitioner had been convicted of first degree murder they would agree that the prosecutorial misconduct had a substantial and injurious effect on the outcome of the trial, but since petitioner was convicted of second degree murder, the prosecutorial misconduct did not have a substantial and injurious effect on the outcome of the trial.  I cannot, however, see that the distinction between first degree murder and second degree murder is a sufficient basis for denial of relief in this case.  A defendant's intent is a critical element of both crimes under Michigan law, and the prosecutorial misconduct involved proving that intent in an egregious manner and, at the same time, impugning the credibility of petitioner's own testimony concerning his intent.  In my view, basic fairness, as well as the constitutional right to due process, prohibits such conduct and, regardless of the degree of the offense in question, such conduct cannot avoid having a substantial and injurious effect on the outcome of the trial.

The Michigan Court of Appeals, in finding harmless error, was required to apply the test set forth in *Chapman v. California*, 386 U.S. 18 (1967), *i.e.*, whether the prosecutorial misconduct was "harmless beyond a reasonable doubt." There is absolutely no indication in its opinion that it followed this clearly established federal law as determined by the Supreme Court of the United States.  To the contrary, it merely found that "it is unlikely that he (the defendant) suffered any prejudice as a result" (of the prosecutorial misconduct).  J.A., Part 1, p. 51.  Even under the high requirement of *Nevers v. Killinger*, 169 F.3d 352 (6th Cir.

the grant of habeas relief even if it did not substantially influence the jury's verdict."[2]

Third, even if the *Brecht* standard of harmless error is to be applied and this case does not fall within the exception noted in *Brecht*, I still would find that the defendant should be given habeas relief. Contrary to the majority view, I do not believe that simply because the state did not have to prove an intent to kill, the prosecutorial misconduct did not have a "substantial and injurious effect or influence in determining the jury's verdict." The defense was based entirely on defendant's contention that the fatal shot was fired accidentally without any intent to kill or injure his girlfriend or to create a high risk of death or injury to her. The defendant's intent was a critical element of the charged offense, and the defendant's own testimony regarding his intent was the foundation of his defense. The prosecutor's effort to destroy the defendant's credibility before the jury and to put before the jury a matter that was not in evidence – the alleged testimony of a disinterested person that would prove an intent by the defendant to kill his girlfriend – in violation of defendant's constitutional right to cross-examine such a witness, could not, in my opinion, fail to have an influence on the jury. As the majority opinion implicitly finds, the standard cautionary instruction was inadequate to "unring the bell," and defendant's reaction to the prosecutor's statements, if anything, only served to pit his credibility against the credibility of a disinterested person who was not produced as a witness and subjected to cross-examination.

The majority finds that, apart from the attempt by the prosecutor to influence the jury in a totally improper way, there was sufficient admissible evidence in the record, in the form of petitioner's statements to the police, to support the jury's verdict. This, I believe, is an improper approach to determine whether the prosecutorial misconduct was harmless

---

[2]In Section II(D) of the majority opinion, Judges Kennedy and Norris agree that "the prosecutor's statements were egregious prosecutorial misconduct."

The Court:    (Interposing) Now, just a moment.

Ms. Petito:    I can make a showing.

The Court:    Just a moment.

Ms. Petito:    If we want to get into it.

The Court:    The lawyers ask the questions, not the witnesses. I have told the jury, at least six times, anything the lawyers say, either lawyer, is not evidence, it's the answers of the witnesses that provide it. The mere fact that a lawyer, either lawyer, says something, doesn't make it true.

The Witness:    I apologize, your Honor.

The Court:    All right.

Mr. Strauss: Your Honor, I have a motion. I ask that you hold the prosecuting attorney in contempt of court for this comment. She just rested her case, this afternoon. And, if she had some competent evidence that my client had sent a bullet, by a waitress, just a couple of months before this death, here, to this Vicki, while she was working, then she should have presented it in her case-in-chief.

The Court:    Now –

Mr. Strauss: (Interposing) And, I object, and move it to be stricken, and move for a mistrial. And, you can deny them all, if you want, but they are on the record.

The Court:    Anything the lawyers say is not evidence, either what Mr. Strauss said, or Ms. Petito. Let's proceed with the case. Motions are denied.

At the close of evidence, the court instructed the jury that in order to find the defendant guilty of second-degree murder, the jury had to find that the defendant had either (1) the intent to kill; (2) the intent to inflict great bodily harm; or (3) the intent to create a high risk of death or great bodily harm with knowledge that such is the probable result. The defense counsel requested that the court instruct the jury not only on second-degree murder, but also on manslaughter. The court complied with this request and the jury was released for deliberation. The jury returned a verdict finding the petitioner guilty of second-degree murder and guilty of possession of a firearm in the commission or in the attempt to commit a felony.

## II. Discussion

### A. Standard of Review

Because petitioner filed his petition for a writ of habeas corpus after April 24, 1996 this court applies the standard of review as set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). This provision states as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1994 & Supp. 1999).

Before applying this new standard to the case before the court, this court must determine how this new standard differs from

not have a substantial injurious effect on the outcome of the trial. I have several problems with this.

First, the issue before us, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), is whether the decision of the Michigan Court of Appeals involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. I think it is clear from the state court's opinion that it did *not* apply the criteria set forth in *Darden v. Wainwright*, 447 U.S. 168, 181 (1985) or, for that matter, the *Angel* criteria adopted in this Circuit, to determine whether the admitted prosecutorial misconduct violated defendant's constitutional right to a fair trial. Furthermore, as discussed later, I think it is also clear that the state court did not apply the *Chapman* standard in its finding of harmless error. In my view, applying the Supreme Court's *Darden* criteria or the *Angel* criteria of this Circuit, the result is that defendant's constitutional right to a fair trial was violated.

Second, even if the violation of defendant's constitutional right to a fair trial is subject to the *Brecht* standard of harmless error, I believe that the prosecutorial misconduct in this case was so outrageous that it falls within the exception noted in the following footnote in *Brecht*:

> Our holding does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict. *Cf. Greer v. Miller*, 483 U.S.756, 769, 107 S.Ct. 3102, 3110, 97 L.Ed.2d 618 (1987) (STEVENS, J., concurring in judgment). We, of course, are not presented with such a situation here.

507 U.S. at 638 n.9. In my opinion, the deliberate and especially egregious prosecutorial misconduct in the present case so infected "the integrity of the proceeding as to warrant

deem the error as not being harmless and should reverse the conviction. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

In *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999), the Sixth Circuit set forth the criteria for determining whether habeas relief should be granted for prosecutorial misconduct:

> To grant relief in such cases as this, we must find that the prosecutor's comments constituted more than simply trial error under state law. The misconduct must be "so fundamentally unfair as to deny him due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), based on "the totality of the circumstances" of the case, taking into account
>
> > the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.
>
> *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*) (quoting from *United States v. Leon*, 534 F.2d 667, 677 (6th Cir. 1976)).

175 F.3d at 445-46.

The majority opinion appears to apply the test for determining whether the prosecutorial misconduct in this case violated the defendant's right to due process, as set forth in *Kincade* and the earlier case of *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) and, with the exception of the prosecutorial misconduct being isolated, "every other prong of the [*Angel*] test" has been satisfied. Opinion, Section II(D). The majority nevertheless then applies the *Brecht* standard for harmless error and, because a second degree murder conviction in Michigan does not require an intent to kill, and there was sufficient evidence to support a finding of intent to create a high risk of death or bodily harm, the conclusion is reached that the prosecutorial misconduct did

the standard that this court previously applied on habeas review.

In *Nevers v. Killinger*, 169 F.3d 352 (6th Cir. 1999), this Circuit considered the appropriate interpretation of the standard set forth in § 2254(d). The *Nevers* court reviewed the interpretations of this provision as set forth by other circuits. The court noted that other circuits viewed the "contrary to" clause as encompassing a different challenge to the state court decision than those challenges pursued under the "unreasonable application" clause. For example, the Fifth and Seventh Circuits contend that "[t]he 'contrary to' clause in § 2254(d)(1) addresses questions of pure law; the 'unreasonable application' clause in § 2254(d)(1) addresses mixed questions of law and fact; and § 2254(d)(2) addresses questions of pure fact. *Nevers*, 169 F.3d at 358. The Eleventh Circuit has adopted a two-prong test in which the court first must "determine the 'clearly established' law at the relevant time." *Neelley v. Nagle*, 138 F.3d 917, 922 (11th Cir. 1998). Then the court must apply either the "contrary to" clause if it is a question of law and the "unreasonable application" clause if it is a mixed question of law and fact. *Id.* at 923-34. The First Circuit, however, has rejected the classifications of the other circuits and instead has approached the issue in the following manner:

> First, the habeas court asks whether the Supreme Court has prescribed a rule that governs the petitioner's claim. If so, the habeas court gauges whether the state court decision is "contrary to" the governing rule. In the absence of a governing rule, the "contrary to" clause drops from the equation and the habeas court takes the second step. At this stage, the habeas court determines whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an "unreasonable application" of Supreme Court precedent.

*O'Brien v. Dubois*, 145 F.3d 16, 24 (1st Cir. 1998).

Although acknowledging that other circuits had taken a variety of approaches in interpreting this provision, the

*Nevers* court found that it did not have to chose which specific approach it found most persuasive because the issue in the case clearly fell under the unreasonable application prong of the statute.  The case before this court also falls under the unreasonable application prong[1], so this court finds it unnecessary to choose which approach is most appropriate to adopt.[2]

The *Nevers* court announced the standard of deference to afford state court decisions under the "unreasonable application" prong of § 2254(d).  This standard requires this court to uphold a state court's determination unless the "unreasonableness of a state court's application of clearly established Supreme Court precedent will not be 'debatable among reasonable jurists,' Drinkard, 97 F.3d at 769, if it is 'so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.'"  169 F.3d at 362. We believe that it is appropriate to apply this standard to this case.

Applying the *Nevers* standard to the facts of this case, this court must ask whether there is a clearly established law

---

[1]Although the petitioner argues that this case falls under the "contrary to" clause because the  lower court analyzed his claim under a Seventh Circuit case that was overturned by the Supreme Court, he is incorrect.  The standard of review set forth in § 2254 (d) applies to this court's review of the state court decision, not our review of the district court decision.  This court reviews the district court's legal conclusions de novo and its factual findings for clear error.  *See Nevers*, 169 F.3d at 357.  Because the petitioner does not assert either (1) "that the facts before the state trial court . . . were 'essentially the same as those the Supreme Court has faced earlier' and that the state court reached a result different than that reached by the Supreme Court" or (2) "that the state courts failed to apply the correct legal standards" this court's analysis focuses on the "unreasonable application" prong. *Tucker v. Prelesnik*, 181 F.3d 747, 752 (6th. Cir. 1999).

[2]This Court avoids this issue because the Supreme Court has granted certiorari and heard arguments in a case in which the issue before the Court is the appropriate interpretation of the meaning of § 2254(d). *See Williams v. Taylor*, 119 S. Ct. 1355, 143 L. Ed.2d 516 (1999).

---

---

## CONCURRING IN PART, DISSENTING IN PART

---

HOLSCHUH, District Judge, concurring in part and dissenting in part.  I concur with the majority opinion regarding the issues of alleged judicial bias and ineffective assistance of counsel.  It is only the issue of prosecutorial misconduct that causes me to dissent from the opinion of my colleagues.

Initially, and as a matter of law, I must agree with the majority that the prosecutorial misconduct in this case is subject to the doctrine of harmless constitutional error as set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).[1]  If, however, a reviewing court is in "grave doubt" as to the constitutional error's impact on the verdict, the court should

---

[1]Prosecutorial misconduct has not been considered a "structural defect" in the trial proceedings that would require an automatic reversal. *See Arizona v. Fulminante*, 499 U.S. 279 (1991).  I, nevertheless, have felt that if, in applying the criteria for determining whether prosecutorial misconduct rises to the level of a violation of defendant's constitutional right to due process, *see Darden v. Wainwright*, 477 U.S. 168, 181 (1985); *Swofford v. Detella*, 101 F.3d 1218 (7th Cir. 1996), it is found that this fundamental right to a fair trial has been violated, there should be no place for a harmless error analysis.  If, in applying that criteria, the prosecutorial misconduct does not rise to the level of a constitutional violation, there is no basis for habeas relief. *Darden*, 477 U.S. at 181 n.15.  The misconduct in such a case can be deemed to be harmless error, but this is not the result of a *Brecht* harmless error analysis.  By applying a harmless error analysis when there has been a constitutional violation, egregious prosecutorial misconduct is permitted if the state's case is deemed to be sufficiently strong, a result that not only reflects adversely on the judicial process in criminal cases, but also does not serve as a deterrent to prosecutorial abuse.  The Sixth Circuit, however, has specifically held that, in cases involving prosecutorial misconduct, the reviewing court must apply a harmless error analysis. *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979); *Pritchett v. Pitcher*, 117 F.3d 959 (6th Cir. 1997).  I respect and, of course, am bound by those decisions.

that these statements did not have a substantial and injurious effect on the outcome of the trial. Determining that reasonable jurists could find the state court's decision to be a reasonable application of Supreme Court law, we deny petitioner's third claim for relief.

### III. Conclusion

For the foregoing reasons, this court denies petitioner's request for a writ of habeas corpus and affirms the judgment of the District Court.

which has been violated. The petitioner raises three issues on habeas. The first issue -- judicial bias -- is a structural error and if found, requires automatic reversal. The other two issues -- the prosecutorial misconduct and the ineffective assistance of counsel claims -- are to be reviewed for harmless error. Prior to the AEDPA amendments, the Supreme Court held in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed.2d 353 (1993), that federal courts should apply a higher harmless error standard when reviewing habeas claims than is appropriate on direct review. The Court held that habeas relief should be granted when the error "ha[s a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 113 S. Ct. at 1714. Because the AEDPA amendments were intended to restrict further federal courts' review of state courts' determinations this appeal raises the question of whether the changes to § 2254(d) require this court to adopt a new method for reviewing harmless error determinations. The *Nevers* court, however, has held that the *Brecht* standard continues to be the appropriate standard to apply on habeas review. 169 F.3d at 371. Because there has been no intervening Supreme Court decision invalidating that panel's decision, this panel conforms to the holding in *Nevers* and applies the *Brecht* standard in its review of the state court's determination of harmless error.

Accepting that the analysis set forth by the *Nevers* court is the appropriate method for reviewing petitioner's claims, the court must first determine whether there is a "clearly established federal law" applicable to the petitioner's claim. If there is, then the court must assess whether the state court's application of this law was reasonable in light of the great deference afforded state courts. This court can overturn a state court determination only if it finds that the unreasonableness of the state court's application of the "clearly established law" is not debatable among reasonable jurists because it is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Nevers*, 169 F.3d at 362.

### B. Judicial Bias

Petitioner claims that the state trial court judge was biased against his counsel; thus, infringing on his Sixth Amendment right to counsel. Petitioner asserts that there were numerous times during trial where the trial judge spoke harshly to his counsel, but he offers one specific exchange intended to demonstrate the trial court's bias. In this exchange, the trial court, outside the presence of the jury, inquired of the defendant whether he would like to change his counsel. He suggested to the defendant that his counsel could not count and insinuated that he thought defense counsel was a jerk. He then proceeded to hold defense counsel in contempt of court, though he did allow counsel to expunge himself of contempt before the jury returned to the courtroom. Petitioner contends that the animosity between the judge and his counsel so infected his trial as to make it substantially unfair.

Because judicial bias infects the entire trial process it is not subject to harmless error review. *See Chapman v. California*, 386 U.S. 18, 23 & n.8, 87 S. Ct. 824, 827-28 & n.8, 17 L. Ed.2d 705 (1966) (stating that the right against coerced confession, the right to counsel and the right to an impartial judge were examples of constitutional rights "so basic to a fair trial that their infraction can never be treated as harmless error."). Instead, the court is required to assess whether the actions of the judge rose to the level of judicial bias. If the court determines that the actions resulted in a constitutional violation, then the court is required to overturn the state court decision. In reviewing claims of judicial bias, this court is guided by the decision in *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed.2d 474 (1994). The Liteky court held that "[a] judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." 510 U.S. at 556, 114 S. Ct. at 1157. The court stated that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed

The prosecutorial misconduct in this case can be analogized to the trial error in the *Nevers* case. The *Nevers* court stated that "[t]he issue at the heart of Nevers's prosecution was not what Nevers did, but why he did it." 169 F.3d at 372. Because it was the province of the jury to determine Nevers's credibility the court determined that the exposure of extraneous information to the jury was not harmless under the *Brecht* standard. This case does differ from *Nevers* in that the trial court in *Nevers* accepted as true the affidavits of jurors that the extraneous information influenced the jury's decision-making process. In this case, we have no finding that the prosecutorial misconduct influenced the jury, so this court must determine whether the prosecutorial misconduct had a substantial and injurious effect on the outcome of the trial. We find that it did not.

Petitioner argues that the prosecutor's improper statements were the only evidence offered as to his intent. Had petitioner been convicted of first-degree murder we would agree that these statements could have had a substantial and injurious effect on the outcome of the trial. Petitioner, however, was convicted of second-degree murder. Although second-degree murder requires the prosecutor to prove intent, it does not require the prosecutor to prove intent to kill. Rather, a defendant can be convicted of second-degree murder if the defendant has the intent to create high risk of death or great bodily harm with knowledge that such is the probable result. *See People v. Porter*, 425 N.W.2d 514 (Mich. App. 1988). At trial, the prosecution's theory of this case was that petitioner was guilty of second-degree murder because he had the intent to cause the risk of harm that resulted in the victim's death. The prosecution's closing arguments focused on the fact that the petitioner was waving around a dangerous weapon in an agitated state. In particular, the prosecution noted that the petitioner stated that he had pointed the gun directly at the victim immediately prior to discharge. Petitioner's statements to the police above provided sufficient evidence of intent to satisfy the requirement for a second-degree murder conviction on this theory. Although we believe that the prosecutor's statement were egregious prosecutorial misconduct we find

In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (en banc).

Looking at the facts of this case in light of these factors, we agree with the state court's determination that the prosecutor's improper questions constitute prosecutorial misconduct. Although the prosecutorial misconduct in this case does not satisfy the continual and extensive prong of the *Angel* test, it satisfies every other prong of the test and the state court found it was egregious prosecutorial misconduct. The prosecution had rested its case before raising the issue of this threat, so a strong argument can be made that the information was deliberately placed before the jurors in an attempt to mislead them. Because there were no witnesses to the shooting other than the decedent and the petitioner, the jury's decision turned on whether it found the petitioner's testimony to be credible. By insinuating that the petitioner had threatened the decedent on a prior occasion, the prosecutor called into question the defendant's testimony about his relationship with the decedent. While defendant's counsel withdrew his objection to the question after his client's answer in which he denied any threat, the prosecutor then suggested to the court that she could "make a showing," despite the fact that she had already rested her case. At no time during the presentation of her case had the prosecutor even broached this subject with any of the witnesses she presented. While the judge gave a general instruction that the lawyers' questions were not to be considered as evidence, the judge never admonished the prosecutor nor did he specifically instruct the jury to disregard the prosecutor's statement. The judge denied defense counsel's motion to hold the prosecutor in contempt of court, his motion for a mistrial, and his request that the exchange be stricken from the record.

as federal judges, sometimes display" do not establish "bias or partiality." *Id.* at 555-56, 114 S. Ct. at 1157.

Although the trial judge did display some animosity toward defense counsel, this did not permeate the trial. Most, if not all, of the disagreements between defense counsel and the court occurred outside the presence of the jury. The state court found that the trial court's behavior did "not rise to the level of error cited in the controlling case law." Because the state court's decision was not "so clearly incorrect that it would not be debatable among reasonable jurists" we deny petitioner's request for relief and affirm the district court's decision that the trial court's action did not constitute judicial bias.

### C.  Ineffective Assistance of Counsel

Petitioner's second claim of error is that his trial counsel was ineffective because he failed to proffer a defense witness who would testify as to a likely cause of the bruises suffered by the decedent. In support of his argument, the petitioner offers the affidavit of Michael Dale Williams. This affidavit states that on the day of the shooting, Michael, another individual, and decedent were wrestling and that the decedent stated that this wrestling was the cause of her bruises. Petitioner contends that this hearsay would be admissible under both M.R.E. 803(1), present sense impression, and M.R.E. 803(3), then existing mental, emotional or physical condition. Whether this testimony is admissible is not the focus of this court's review. Rather, the court must assess whether the state court's determination that counsel's actions were harmless was appropriate under the *Brecht* standard.

The standard for reviewing ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984). This test requires a reviewing court to assess whether counsel's performance was deficient. The court must determine whether counsel's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S. Ct. at 2064. If the

petitioner demonstrates that his counsel was deficient, he then must establish that this deficiency prejudiced the defense in order to obtain relief. *Id.* This test requires the court to utilize an objective standard of reasonableness. *Id.* at 688, 104 S. Ct. at 2064.

On direct appeal, the Michigan Court of Appeals applied the *Strickland* test in evaluating petitioner's claim. Although the court did not specifically address the issue raised on petitioner's habeas claim – unwillingness to call a crucial defense witness to testify – in its decision, its use of the *Strickland* test demonstrates that it understood and applied the appropriate standard in reviewing the petitioner's claim of ineffective assistance of counsel. We review this decision for harmless error.

Applying *Brecht* to the facts of this case, this court finds that any error that occurred was harmless error. On his direct appeal, petitioner raised the issue of ineffective assistance of counsel, but he did not request that the court hold an evidentiary hearing; thus, this court can consider only the evidence in the record. A review of that evidence demonstrates that any error that occurred was harmless. The petitioner "bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy." *Tucker,* 181 F.3d at 754. The record shows that defense counsel believed that the prosecution did not have sufficient evidence to prove second-degree murder; thus, he chose to limit the defense to the testimony of the defendant. A review of the evidence presented at trial, of which defense counsel was aware prior to trial, supports defense counsel's belief and leads this court to conclude that petitioner has not overcome the presumption that defense counsel was exercising sound trial strategy. Finding that the state court decision should be upheld under the *Brecht* standard, this court denies petitioner's request for relief on this claim.

### D.  Prosecutorial Misconduct

The petitioner's third claim is that the state court's determination that prosecutorial misconduct did not result in

substantial prejudice at petitioner's trial was erroneous. Petitioner argues that this misconduct had an injurious effect on the outcome of his trial because this misconduct provided the jury with inappropriate evidence of intent. At the conclusion of petitioner's trial, the court instructed the jury as to the elements of second-degree murder and the three types of manslaughter. To convict the petitioner of either second-degree murder or involuntary manslaughter, the prosecution had to produce evidence of intent. The petitioner contends that the prosecution offered no other evidence of intent at trial; thus, for the jury to have convicted the petitioner of second-degree murder, the jury must have believed the inappropriate statements made by the prosecutor.

During the prosecution's cross-examination of the petitioner, the prosecutor insinuated by her question that the petitioner had threatened the decedent on a prior occasion. Despite the fact that the prosecution had rested its case, she stated in response to the defense counsel's objection that she could offer proof to support the question. Although the court immediately instructed the jury that nothing the attorneys say is evidence and that only the answers to the attorneys' question are to be considered as evidence, the trial court did not strike the question from the record, nor did he specifically instruct the jury to disregard the prosecutor's statements.

On direct appeal the Michigan Court of Appeals determined that the prosecution's question and remarks were prosecutorial misconduct. Yet, the court stated that it did not "believe that [the] error was so prejudicial that reversal [wa]s required for the reason that the court cured the taint with an immediate cautionary instruction." The court also reasoned that any prejudice was alleviated by the defendant's response to the question. Because prosecutorial misconduct falls into the category of trial, rather than structural, errors this court should review the state court's decision for harmless error. *See Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).

The Sixth Circuit has identified several factors that should be considered when weighing prosecutorial misconduct.